IN THE SUPREME COURT OF THE STATE OF NEVADA

TIMMY JOHN WEBER, A/K/A
TIMOTHY JOHN WEBER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78561

FILED

SEP 11 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Douglas Smith, Judge.

In 2003, appellant Timmy Weber was convicted of multiple crimes, including kidnapping, sexual assault on a child, production and possession of child pornography, burglary, and two counts of first-degree murder for the deaths of A.G. and K.G. The jury found 12 aggravating circumstances and 13 mitigating circumstances in the death of K.G. and determined that Weber should receive a sentence of life without parole for K.G's murder. For A.G's murder, the jury found 13 aggravating circumstances, including torture, and 13 mitigating circumstances. The jury found that the aggravating circumstances outweighed any mitigating circumstances and sentenced Weber to death for A.G.'s murder. The judgment of conviction was filed on May 8, 2003.

This court affirmed Weber's conviction and death sentence on appeal. *Weber v. State (Weber I)*, 121 Nev. 554, 119 P.3d 107 (2005). In conducting its mandatory review of the death sentence, this court noted the substantial evidence that supported the conviction and determined that

20-33486

there was no indication the sentence was imposed under any improper influence:

> [T]he record shows that Weber had a discerning jury that distinguished [K's] murder from A.'s, choosing to impose death only for the latter. A. was a young teenager, lured by Weber to his death with the promise of money from his mother. And the death A. suffered was particularly slow and agonizing. These are only two of the objective factors the jury could have considered in distinguishing between the murders.

*Id.* at 588, 119 P.3d at 130.

Weber next unsuccessfully challenged his conviction in a postconviction petition for a writ of habeas corpus, in which he alleged ineffective assistance of counsel and raised a number of claims, including a challenge to the torture aggravating circumstance, that were waived because they were not presented on direct appeal and good cause was not shown. The district court denied the petition, and this court affirmed. *Weber v. State (Weber II)*, Docket No. 50613 (Order of Affirmance, July 20, 2010).

Weber then filed a second postconviction habeas petition. He asserted that first postconviction counsel should have argued that appellate counsel was ineffective for not challenging a redundant prior-violent-felony-conviction aggravating circumstance (based on A.G.'s kidnapping) and the sufficiency of the evidence to support two burglary convictions and the burglary aggravating circumstance. *Weber v. State (Weber III)*, Docket No. 62473 (Order Affirming in Part, Reversing in Part and Remanding, June 24, 2016). Weber also argued that he was actually innocent of the death penalty because of the two invalid aggravating circumstances. This court concluded that one of the prior-violent-felony-conviction aggravating

circumstances (based on the conviction for kidnapping A.G.) was redundant pursuant to NRS 200.033(2)(b). *Id.* at 25-27. But this court further determined that Weber did not demonstrate that appellate counsel was ineffective, and consequently postconviction counsel was not ineffective, because Weber did not show a reasonable probability of a different outcome on direct appeal: in reweighing or conducting a harmless-error review, the results would have been the same considering the numerous remaining aggravating circumstances and the mitigating circumstances presented. *Id.* As to the ineffective-assistance claims related to the sufficiency of the evidence to support the burglary convictions, this court remanded for an evidentiary hearing because it was not clear whether Weber had an absolute right to enter the home at the time of the crimes. *Id.* at 27-29. In contrast, this court determined that Weber had not demonstrated the prejudice-prong of a related claim that appellate counsel should have challenged the sufficiency of the evidence to support the burglary aggravating circumstance:

> Although a successful challenge to the aggravating circumstance might have resulted in this court striking the aggravating circumstance, it would not have afforded Weber relief from the death sentence. In particular, after reweighing the aggravating and mitigating circumstances or conducting a harmless-error review, we conclude that there is no reasonable probability that this court would have reversed the death sentence considering the numerous remaining aggravating circumstances and the mitigating evidence presented.

*Id.* at 29. And to the extent Weber claimed that he was actually innocent of the death penalty, this court rejected the argument because after striking the prior-violent-felony-conviction aggravating circumstance and even

assuming that the burglary aggravating circumstance should have been stricken, other valid aggravating circumstances remained. *Id.* at 29 n.7.

On remand, the State agreed to dismiss the burglary counts. Weber then asked the district court to dismiss the burglary aggravating circumstance as well, but in rejecting the request, the district court noted that this court had only remanded as to the claim related to the burglary convictions and had resolved the claim related to the burglary aggravating circumstance. The district court subsequently amended the judgment of conviction to dismiss the burglary convictions. Weber filed an appeal from the amended judgment of conviction, arguing that the district court erred in not striking the burglary aggravating circumstance. This court ultimately dismissed the appeal because Weber was not aggrieved and did not raise claims challenging the amendment to the judgment of conviction. *Weber v. State*, Docket No. 72734 (Order Dismissing Appeal, July 26, 2018).

Subsequently, on August 22, 2018, Weber filed a third postconviction petition for a writ of habeas corpus, in which he challenged the burglary aggravating circumstance and raised a number of claims under the umbrella of cumulative error. The district court denied the petition as untimely, successive, and an abuse of the writ, determining that Weber had not demonstrated good cause and prejudice. The district court also applied statutory laches because the State had affirmatively pleaded it, and Weber had not overcome the rebuttable presumption of prejudice to the State. We conclude the district court did not err in denying the petition as procedurally barred and barred by laches. *See State v. Huebler*, 128 Nev. 192, 197, 275 P.3d 91, 95 (2012) (recognizing that this court gives deference to factual findings but will review the application of the law to the facts de novo).

*The third petition is subject to procedural bars.*

Weber first argues that his 2018 petition should be considered a first petition because the amended judgment of conviction and subsequent appeal provided him a "fresh opportunity to challenge that judgment in a new, timely first petition." We disagree.

Entry of an amended judgment of conviction does not begin the postconviction relief process anew. An amended judgment of conviction is substantively appealable, *see* NRS 177.015(3); *Witter v. State*, 135 Nev. 412, 416, 452 P.3d 406, 410 (2019), and an appeal from an amended judgment is a direct appeal. However, the scope of an appeal from an amended judgment of conviction is limited to issues that arise from the amendment to the original judgment of conviction. *See Witter*, 135 Nev. at 416-17, 452 P.3d at 410; *Jackson v. State*, 133 Nev. 880, 882, 410 P.3d 1004, 1006 (Ct. App. 2017). And Weber mischaracterizes the holding in *Sullivan v. State*, 120 Nev. 537, 96 P.3d 761 (2004)—the amended judgment of conviction does not make a subsequent petition timely but instead provides good cause to raise claims challenging any amendments. *Sullivan*, 120 Nev. at 541, 96 P.3d at 764 ("In keeping with the spirit of NRS 34.726, we conclude that the one-year statutory time limit did not automatically restart for Sullivan's postconviction claims simply because the district court entered the amended judgment of conviction."). There are only two triggers for the timely filing of a postconviction petition for a writ of habeas corpus: entry of the original judgment of conviction or issuance of the remittitur from a timely direct appeal. *See* NRS 34.726(1); *see also Rippo v. State*, 134 Nev. 411, 419, 423 P.3d 1084, 1095 (2018).

The other authority Weber cites is similarly unpersuasive. In *Johnson v. State*, 133 Nev. 571, 574, 402 P.3d 1266, 1272 (2017), this court

held that "the one-year period set forth in NRS 34.726(1) did not trigger until remittitur issued on direct appeal from the judgment of conviction entered after the new penalty hearing." But in that case, Johnson had won a new penalty hearing on direct appeal, which meant that his death sentences had been vacated and there was no final judgment setting forth the sentences for his murder convictions to trigger the time to file a habeas petition. *Id.* Unlike in *Johnson*, Weber did not successfully challenge his death sentences on direct appeal and his death sentence has never been vacated. By the same token, the unpublished decision in *Rodriguez v. State*, Docket No. 70969 (Order of Reversal and Remand, May 5, 2017), merely recognized that while the petition at issue was the second petition filed, it was actually the petitioner's first opportunity to collaterally challenge the new death sentence imposed after he had been granted a new penalty hearing. Again, as Weber has never had his death sentence vacated, his reliance on *Rodriguez* is misplaced.[1]

Thus, the petition filed on August 22, 2018, was untimely from the issuance of the remittitur on direct appeal on October 11, 2005, *see* NRS 34.726(1), successive because Weber had previously litigated a postconviction petition for a writ of habeas corpus on the merits, *see* NRS 34.810(1)(b), (2), and an abuse of the writ to the extent that he raised claims not previously litigated, *see* NRS 34.810(2). Weber's petition was

---

[1]The Supreme Court's decision in *Magwood v. Patterson*, 561 U.S. 320, 323, 332-33 (2010), also does not support Weber's position because Magwood, like Johnson and Rodriguez, had won a new penalty hearing and therefore his petition challenging the new sentence was not a second or successive petition under federal law. Likewise, the Ninth Circuit's decision in *Smith v. Williams*, 871 F.3d 684, 688 (9th Cir. 2017), is distinguishable as it addresses federal procedural bars.

procedurally barred absent a demonstration of good cause and actual prejudice.[2] *See* NRS 34.726(1); NRS 34.810(1)(b); NRS 34.810(3). Moreover, because the State pleaded and the district court applied statutory laches pursuant to NRS 34.800(2), Weber was required to overcome the rebuttable presumption of prejudice.

*Weber's has not demonstrated good cause.*

Good cause is an impediment external to the defense, such as where the factual and legal circumstances were not reasonably available at the time of the procedural default. *Hathaway v. State*, 119 Nev. 248, 252-53, 71 P.3d 503, 506 (2003). We conclude that the district court did not err in determining that Weber has not demonstrated good cause.

Weber's first argument that he has good cause due to entry of the amended judgment of conviction is flawed. The amendment only dismissed the burglary convictions. Thus, the amended judgment of

---

[2]The entire petition is subject to the time bar set forth in NRS 34.726(1). The waiver bar in NRS 34.810(1)(b)(2) and the abuse-of-writ bar in NRS 34.810(2) apply to Weber's stand-alone claim challenging the sufficiency of the evidence supporting the burglary aggravating circumstance. The successive bar in NRS 34.810(2) applies to Weber's claim that he is actually innocent of the death penalty and the challenge to this court's reweighing and/or harmless-error analysis. That bar also applies to the extent this court has already considered and rejected Weber's challenge to the burglary aggravating circumstance under the umbrella of an appellate-counsel claim in the second habeas proceedings. Weber's cumulative error claim improperly incorporates claims (prosecutorial misconduct and jury selection errors) that have never been determined to be error in any prior proceeding, and thus, they will not be considered in the resolution of this appeal. To the extent that Weber raises jury selection errors and prosecutorial misconduct as stand-alone claims (claims independent of a claim of ineffective assistance of counsel), these claims are subject to the waiver and abuse-of-the writ procedural bars set forth in NRS 34.810(1)(b)(2), (2).

conviction does not provide good cause to challenge the burglary aggravating circumstance, this court's prior reweighing/harmless-error analysis, prosecutorial misconduct, or jury selection errors. *See Sullivan*, 120 Nev. at 541, 96 P.3d at 764 (holding that an amended judgment of conviction would provide good cause to challenge any amendments to the judgment). Notably, the underlying challenge to the burglary aggravating circumstance has been available all along; entry of the amended judgment of conviction does not alter this fact. *See State v. White*, 130 Nev. 533, 538-39, 330 P.3d 482, 486 (2014) (interpreting Nevada burglary statute); *Colwell v. State*, 118 Nev. 807, 819, 59 P.3d 463, 472 (2002) (recognizing that if the court's interpretation of a statute is dictated by existing precedent, or even by the statute's plain language, the decision is not new; it simply states the existing law). The amended judgment of conviction would likewise not provide good cause for Weber's prosecutorial misconduct and jury selection claims, which could have been raised earlier. That Weber raised these claims in his second petition but did not cogently argue them on appeal does not provide good cause as it is not an impediment external to the defense and he was not entitled to the effective assistance of counsel in the second habeas corpus proceedings. *See* NRS 34.830(1); *Crump v. Warden*, 113 Nev. 293, 303, 934 P.2d 247, 253 (1997).

More importantly, the proceedings below and the amended judgment of conviction dismissing the burglary convictions did not alter this court's decision in *Weber III*. In that case, this court determined that even if appellate counsel had succeeded in having the burglary aggravating circumstance stricken on direct appeal, Weber would not have been granted relief from his death sentence. *Weber III*, Docket No. 62473, Order Affirming in Part, Reversing in Part, and Remanding at 29. In particular,

we determined in *Weber III* that whether reweighing the aggravating and mitigating circumstances or conducting a harmless-error review, there was no reasonable probability of a different outcome on appeal given the numerous remaining aggravating circumstances and the mitigating circumstances presented. *Id.* This court further determined Weber had not demonstrated he was actually innocent of the death penalty because of the aggravating circumstances that remained even if the burglary aggravating circumstance had been stricken. *Id.* at 29 n.7. Although Weber attempts to paint the State's request to dismiss the burglary counts as fundamentally altering the factual landscape, there simply are no facts or legal circumstances that have changed since *Weber III* that would provide good cause to file a late, third petition challenging the burglary aggravating circumstance or this court's reweighing and harmless-error review.[3] Because the remand in *Weber III* only encompassed the counsel-claims related to the burglary convictions, the district court properly limited the

---

[3]Weber refers to this court's decision in *Weber III* as preemptive, but there was nothing preemptive about it. Weber raised a claim that postconviction counsel should have argued that appellate counsel was ineffective in not challenging the burglary aggravating circumstance. An ineffective-assistance-of-counsel claim may be decided on the prejudice-prong alone. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). When considering the prejudice prong of Weber's appellate-counsel claim, this court necessarily examined the merits of the substantive challenge to the burglary aggravating circumstance. *See Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996) (recognizing that prejudice requires a showing that an omitted issue would have had a reasonable probability of success on appeal). This court decided that Weber had not demonstrated prejudice, and thus, his appellate-counsel and corresponding postconviction-counsel claims were without merit. Weber thus is mistaken to the extent that he argues the substantive claim challenging the burglary aggravating circumstance is fundamentally different from his prior ineffective-assistance claims.

scope of the proceedings on remand to the burglary convictions. Weber's argument that the district court could have decided otherwise on remand is without merit as this court's decision in *Weber III* is the law of the case. *See Hall v. State*, 91 Nev. 314, 535 P.2d 797 (1975). In addition, his actual innocence argument does not overcome the law of the case because Weber remains death-eligible due to the capital offense and the remaining aggravating circumstances. *Lisle v. State*, 131 Nev. 356, 367, 351 P.3d 725, 734 (2015); *see also Hsu v. Cty. of Clark*, 123 Nev. 625, 630-31, 173 P.3d 724, 729 (2007).

Next, Weber argues that he has good cause because the State should have admitted sooner that it could not prove burglary and the district court should have dismissed his burglary convictions sooner. This argument apparently stems from the district court's observation that the third petition was filed more than 18 months after entry of the amended judgment of conviction. The argument fails, however, because it only accounts for a portion of the 13-year delay in filing the petition. Weber provides no cogent argument explaining the whole of the delay.

Weber next argues this court's initial denial of the motion to dismiss the appeal from the amended judgment of conviction provides good cause. Weber asserts that he had no reason to believe that he needed to file a petition sooner because this court misled him by denying the State's motion to dismiss and that he believed this court would reach a decision on the merits. He also argues that he could not file a petition until that appeal was resolved because the district court lacked jurisdiction over a habeas petition while that appeal was pending. For reasons similar to those discussed above, the fatal flaw to this argument is that the petition is not simply filed late from the amended judgment of conviction but it is a third

SUPREME COURT
OF
NEVADA

(O) 1947A

10

petition filed 13 years after issuance of the remittitur on direct appeal. Further, while this court has recognized good cause may be shown for a late petition when the petitioner reasonably believed a direct appeal was pending, *see Hathaway*, 119 Nev. at 254-55, 71 P.3d at 507-08, this court has never recognized that all appeals provide good cause to excuse the delay in filing a petition. *See, e.g., Dickerson v. State*, 114 Nev. 1084, 1087, 967 P.2d 1132, 1133-34 (1998) ("We now construe NRS 34.726(1) to mean the one-year period for filing a post-conviction habeas corpus petition begins to run from the issuance of the remittitur from a *timely* direct appeal to this court . . . ."). The fact that this court waited to dismiss the appeal until the matter was fully briefed could not excuse procedural defects that predated this court's denial of the motion to dismiss. Finally, Weber's argument that the district court was divested of jurisdiction is without merit as a habeas petition is considered collateral to the proceedings in the district court. *See* NRS 34.724(2)(a) (providing that a habeas corpus petition is not a substitute for and does not affect the remedy of direct review); *Daniels v. State*, 100 Nev. 579, 580, 688 P.2d 315, 316 (1984) (recognizing that a postconviction proceeding is separate from the direct appeal), *overruled on other grounds by Varwig v. State*, 104 Nev. 40, 752 P.2d 760 (1988); *Groesbeck v. Warden*, 100 Nev. 259, 260, 679 P.2d 1268, 1268-69 (1984) (recognizing that a habeas petition is a petition seeking collateral review).

Therefore, Weber's procedurally-barred petition is without good cause. This alone is sufficient to affirm the district court's order denying the petition. But as a separate ground to affirm the district court's order, we further conclude that Weber has not demonstrated prejudice for purposes of the procedural bars in NRS 34.726 and NRS 34.810 or overcome the rebuttable presumption of prejudice under NRS 34.800.

*Weber has not demonstrated prejudice.*

To demonstrate prejudice to overcome application of the procedural bars, Weber had to show that any error worked to his actual and substantial disadvantage. *Hogan v. Warden*, 109 Nev. 952, 960, 860 P.2d 710, 716 (1993). To overcome application of statutory laches pursuant to NRS 34.800(2), Weber had to show that he could not have had knowledge of the claim by exercise of reasonable diligence before the circumstances prejudicial to the State occurred and a fundamental miscarriage of justice.

Weber first argues that he can demonstrate prejudice because the burglary aggravating circumstance should have been stricken when the State admitted on remand from *Weber III* that it could not prove burglary. This argument falls short of demonstrating actual prejudice because this court has already determined that striking the burglary aggravating circumstance would not have afforded Weber relief from the death sentence. *Weber III*, Docket No. 62473, Order Affirming in Part, Reversing in Part, and Remanding at 29.

Next, Weber argues that he was prejudiced because in *Weber III* this court did not consider the cumulative impact of striking both the prior-violent-felony-conviction aggravating circumstance (based on A.G.'s kidnapping) and the burglary aggravating circumstance. Weber is wrong. In *Weber III*, this court first addressed the counsel claims related to the prior-violent-felony-conviction aggravating circumstance and struck that aggravating circumstance, *id.* at 26-27, n.6, before turning to the claims related to the burglary aggravating circumstance. Thus, when this court considered whether there was a reasonable probability of a different outcome on direct appeal had appellate counsel challenged the burglary aggravating circumstance and decided that there was not such a probability

considering the *remaining* aggravating circumstances, the prior-violent-felony-conviction aggravating circumstance that we had just struck was not one of those remaining aggravating circumstances. *Id.* at 29. Further, when analyzing the actual-innocence–of-the-death-penalty claim in *Weber III*, this court proceeded as if both aggravating circumstances had been stricken. *Id.* at 29 n.7. Finally, this court considered the cumulative impact of counsel's performance relating to both of those aggravating circumstances and determined that Weber had not been prejudiced. *Id.* at 30. There is simply no support for Weber's argument that we did not consider the cumulative impact of striking both aggravating circumstances in *Weber III*.

Next, Weber argues that he can demonstrate prejudice by comparing the number of aggravating circumstances that the jury found for K.G.'s murder to the number of aggravating circumstances that remain for A.G.'s murder. His argument goes like this: The jury found one more aggravating circumstance for A.G.'s murder (13) than for K.G.'s murder (12), but when the two aggravating circumstances that were addressed in *Weber III* (prior-violent-felony conviction for kidnapping A.G. and burglary) are subtracted from the list of aggravating circumstances the jury found for A.G.'s murder, there are now fewer aggravating circumstances for A.G.'s murder (11) than for K.G.'s murder (12). And with fewer aggravating circumstances for A.G.'s murder, Weber opines there is a reasonable probability that the jury would have sentenced him to life without parole for A.G.'s murder, the same as it did for K.G.'s murder.

There are multiple problems with Weber's mathematical argument. First, our decision in *Weber III* that the cumulative impact of invalidating the prior-violent-felony-conviction aggravating circumstance

SUPREME COURT
OF
NEVADA

(O) 1947A

13

and the burglary aggravating circumstance did not prejudice Weber is the law of the case. *Hall v. State*, 91 Nev. 314, 535 P.2d 797 (1975). Second, Weber's mathematical comparison is fundamentally flawed. The jury found the same prior-violent-felony-conviction and burglary aggravating circumstances as to K.G.'s murder. So to make a fair mathematical comparison, those aggravating circumstances should be subtracted from the list of aggravating circumstances the jury found for K.G.'s murder. Doing so leaves Weber in the same position he was in before *Weber III*—one more aggravating circumstance for A.G.'s murder than for K.G.'s murder. Finally, and more importantly, "the weighing of aggravating and mitigating circumstances is not a simplistic, mathematical process." *State v. Haberstroh*, 119 Nev. 173, 184, 69 P.3d 676, 683 (2003); *see also Leonard v. State*, 114 Nev. 1196, 1216, 969 P.2d 288, 300-01 (1998). A simple mathematical comparison does not tell the whole story when it comes to the weighing of aggravating and mitigating circumstances and the decision whether to select death as the appropriate sentence. Here, we have already pointed out a qualitative difference in the aggravating circumstances the jury found with respect to A.G.'s murder—the jury found that A.G. was tortured. *Weber I*, 121 Nev. at 588, 119 P.3d at 130. As we observed in our mandatory review of the death sentence on direct appeal, A.G.'s death "was particularly slow and agonizing."[4] *Id.* And we also pointed out qualitative

---

[4]Weber acknowledged the significance of the torture aggravating circumstance when he challenged that circumstance's validity while litigating his second postconviction habeas petition. In relevant part that petition said, "It is clear beyond a reasonable doubt that Mr. Weber would not have been sentenced to death without the aggravating circumstance of torture. Although Mr. Weber was convicted of the murders of [K.G.] and [A.G.], the jury sentenced him to death only for the murder of [A.G.], the

SUPREME COURT
OF
NEVADA

(O) 1947A

14

differences in the other circumstances surrounding A.G.'s murder that likely influenced the jury's selection of a death sentence for A.G.'s murder—including that Weber lured the teenage A.G. to the home in order to kill him. *Id.* These differences between the aggravating circumstances and the other circumstances surrounding the two murders remain the same regardless of the prior-violent-felony aggravating circumstance and the burglary aggravating circumstance.

Next, Weber argues that his right to equal protection will be violated if his death sentence is not vacated. In particular, he argues that he is being treated differently than another defendant who was convicted of multiple murders but was sentenced to death for only one of them. He points out that in *Wesley v. State*, Docket No. 48991 (Order Affirming in Part, Reversing in Part and Remanding, January 6, 2010), this court said that it could not determine the effect an invalid aggravating circumstance had on the jury's decision to impose a death sentence for only one of the defendant's multiple murder convictions. Weber's equal protection argument is flawed at its core—equal protection does not guarantee uniformity of court decisions or insure against judicial error. *See Beck v. Washington*, 369 U.S. 541, 554-55 (1962); *see also Little v. Crawford*, 449 F.3d 1075, 1082 (9th Cir. 2006) ("Little's claim, at most, amounts to an allegation that in his case Nevada law was misapplied or that the Nevada Supreme Court departed from its earlier decisions. Under clearly

---

distinguishing factor being the finding of torture in [A.G.'s] case." In support of that argument, Weber pointed to a trial transcript (February 27, 2003) and an exhibit that quoted one of the jurors as stating, "Torture was the reason why we chose the death penalty for the murder of [A.G.] and not [K.G.]."

established Supreme Court law, such contention neither gives rise to an equal protection claim, nor provides a basis for habeas relief.").[5]

Weber next argues that he was prejudiced because this court's reweighing or harmless-error review in *Weber III* runs afoul of *Hurst v. Florida*, 136 S. Ct. 616 (2016). He acknowledges that this court rejected similar arguments based on *Hurst* in *Jeremias v. State*, 134 Nev. 46, 412 P.3d 43 (2018), *cert. denied* 139 S. Ct. 415 (2018), and *Castillo v. State*, 135 Nev. 126, 442 P.3d 558 (2019), *cert. denied*, No. 19-7647, 2020 WL 1906635 (U.S. April 20, 2020), and asks us to reconsider those decisions. We decline to do so. *See also McKinney v. Arizona*, 140 S. Ct. 702, 709 (2020) (holding "state appellate courts may conduct a . . . reweighing of aggravating and mitigating circumstances, and may do so in collateral proceedings as appropriate and provided under state law").

Finally, Weber has not cogently addressed statutory laches under NRS 34.800. Based on that omission alone, we could affirm the district court's order denying his petition. *See Maresca*, 103 Nev. at 673, 748 P.2d at 6. In any event, as discussed earlier, Weber has not demonstrated that he could not have raised his claims earlier, and he has not demonstrated a fundamental miscarriage of justice, that he is actually innocent of the death penalty, given the numerous remaining, valid

---

[5]We note that Weber does not provide any specific facts or argument showing how he is similarly situated to Wesley beyond a statement that each case involved the murder of multiple victims in which the jury imposed a death sentence for only one of the murders and aggravating circumstances were later invalidated. For example, he does not address the aggravating and mitigating circumstances in each case or the other circumstances surrounding the murders in each case. His argument in this respect falls short of his burden to provide cogent argument. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).

SUPREME COURT
OF
NEVADA

(O) 1947A

16

aggravating circumstances. *Lisle*, 131 Nev. at 367-68, 351 P.3d at 734 (recognizing that the actual innocence inquiry focuses on the elements of a capital offense and the aggravating circumstances); *Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001) (recognizing that a fundamental miscarriage of justice is ineligibility for the death penalty). We therefore conclude that the district court also did not err in denying the petition pursuant to NRS 34.800.

Having concluded that the district court did not err in determining that the petition was procedurally barred and barred by laches, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Pickering

_____, J.          _____, J.
Gibbons                                        Hardesty

_____, J.          _____, J.
Parraguirre                                  Stiglich

_____, J.          _____, J.
Cadish                                          Silver

cc:   Hon. Linda Bell, Chief District Judge
      Eighth Judicial District Court, Dept. 8
      Federal Public Defender
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk